IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAX TURNER., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-1589-RGA |
| | : | |
| ROBERT MAY, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

## MEMORANDUM OPINION

Max Turner. *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

January 29, 2021
Wilmington, Delaware

---

[1]Warden Robert May is substituted for former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Max Turner is an inmate in custody at the James Vaughn Correctional Center in Smyrna, Delaware.  Petitioner filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 1)  The State filed an Answer in opposition, asserting that the Petition should be dismissed in its entirety as time-barred or, alternatively, as procedurally barred and meritless.  (D.I. 13)  For the reasons discussed, the Court will deny the Petition as time-barred and, alternatively, as procedurally barred from federal habeas review.

## I.    BACKGROUND

In January 2013, Petitioner was indicted on charges of second degree murder, second degree assault, first degree reckless endangerment, three counts of possession of a firearm during the commission of a felony ("PFDCF"), and possession of a firearm by a person prohibited ("PFBPP").  *See Turner v. State*, 127 A.3d 1169 (Table), 2015 WL 6941264, at *1 (Del. Nov. 9, 2015).  "The charges arose from the tragic shooting on July 24, 2012, of two people, one of whom died, who were innocent bystanders in a street shooting." *Id.*

Prior to trial, the Superior Court granted Petitioner's motion to sever the PFBPP from the other charges in the indictment and have it considered by the trial judge. (D.I. 14-1 at 8, Entry No. 48)  The trial judge found Petitioner guilty of the PFBPP charge. Following a seven-day trial in June 2014, a Delaware Superior Court jury convicted Petitioner of the remaining charges. (D.I. 14-1 at 9, Entry No. 61). On November 13, 2014, the Superior Court sentenced Petitioner to a total of seventy-eight years at Level V incarceration, suspended after nine years for decreasing levels of supervision.  *See Turner*, 2015 WL 6941264, at *1; *see also* (D.I. 14-3 at 24-28). Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentence. *See Turner*, 2015 WL 6941264, at *2.

On April 7, 2016, Petitioner, acting *pro se*, filed a motion to obtain his trial transcripts to prepare for post-conviction relief. (D.I. 14-1 at 13, Entry No. 90)  The Superior Court denied the motion for transcripts on April 18, 2016 because Petitioner did "not currently have a matter pending before the court which might require transcripts." (D.I. 14-1 at 13, Entry. No. 91)

On December 19, 2016, Petitioner  filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 14-1 at 13, Entry No. 92) The Superior Court denied the Rule 61 motion on March 28, 2017. (D.I. 14-1 at 14, Entry No. 95); *see State v. Turner*, 2017 WL 7804296, at *3 (Del. Super. Ct. Mar. 28, 2017). Petitioner did not appeal that decision.

Petitioner filed the instant Petition in November 2017, asserting the following eight grounds for relief: (1) there was insufficient evidence to convict him of second degree murder; (2) the trial court erred in admitting certain witness testimony; (3) trial counsel were ineffective in permitting him to waive his Fifth Amendment right to testify in his own defense; (4) he is "innocent" of second degree murder and any related firearm charges; (5) trial counsel were ineffective because they were aware that the prosecutor "knew the shooter was not [Petitioner];" (6) police violated his constitutional rights when they conducted a warrantless search of the contents of his phone; (7) the trial court erred when it denied his request for full trial transcripts; and (8) the trial court erred when it denied his postconviction motion as untimely. (D.I. 1 at 15-18)

## II.   ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by

state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such
> review;

> (B) the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by such
> State action;

> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable
> to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling.

*See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2)

(statutory tolling).

Petitioner does not assert, and the Court cannot discern, any facts triggering the

application of § 2244(d)(1)(B), (C), or (D).  Consequently, the Court concludes that the one-year

period of limitations began to run when Petitioner's convictions became final under

§ 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does

not seek certiorari review, the judgment of conviction becomes final, and the statute of

limitations begins to run, upon expiration of the ninety-day time period allowed for seeking

3

certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).  In this case, the Delaware Supreme Court affirmed Petitioner's convictions and sentence on November 9, 2015, and he did not file a petition for a writ of certiorari in the United States Supreme Court.  As a result, Petitioner's convictions became final on February 8, 2016.[2]  Applying the one-year limitations period to that date, Petitioner had until February 8, 2017 to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).  Petitioner, however, did not file the instant Petition until November 3, 2017,[3] approximately nine months after that deadline.  Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158.  The Court will discuss each doctrine in turn.

## A.  Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of

---

[2]The ninety day period actually expired on February 7, 2016, which was a Sunday.  Therefore, the period extended to February 8, 2016. *See* Fed. R. Civ. P. 6(a)(1)(C).

[3]Pursuant to the prisoner mailbox rule, the Court adopts as the filing date November 3, 2017, which is the date on Petitioner's certification of mailing (D.I. 1 at 16). *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *Id.* at 424. In contrast, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

When Petitioner filed his Rule 61 motion on December 19, 2016, 315 days of AEDPA's limitations period had already lapsed. The Superior Court denied the Rule 61 motion on March 28, 2017. Even though Petitioner did not appeal that decision, the Rule 61 motion tolled the limitations through April 27, 2017, which includes the thirty-day appeal period. The limitations clock started to run again on April 28, 2017, and ran the remaining fifty days without interruption until the limitations period expired on June 19, 2017.[4] Thus, even with the statutory tolling resulting from his Rule 61 motion, Petitioner filed the instant Petition 137 days too late. Accordingly, the Petition is time-barred, unless equitable tolling applies.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the

---

[4]The limitations period actually ended on June 17, 2017, which was a Saturday. Therefore, Petitioner had until the end of the day on Monday, June 19, 2017 to timely file his Petition. *See* Fed. R. Civ. P. 6(a)(1)(C).

late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. As for the extraordinary

circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be

extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to

meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).

Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal

connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to

file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

Petitioner attempts to trigger equitable tolling with a one-sentence assertion that he

"never received any notice by the [Delaware] Supreme Court" that it had denied his appeal.

(D.I. 1 at 13) A petitioner's lack of knowledge that the state courts have reached a final

resolution in his case can constitute an extraordinary circumstance if the petitioner acted

diligently to obtain notice of the state court's decision. *See LaCava v. Kyler*, 398 F.3d 271, 276-

77 (3d Cir. 2005); *Young v. Johnson*, 2021 WL 129939, at *1 (9th Cir. Jan. 14, 2021); *Miller v.

Collins*, 305 F. 3d 491, 495 (6th Cir. 2002); *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th

Cir. 2001); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2001). Even accepting as true

Petitioner's statement, which is made under penalty of perjury, that he did not receive notice of

the Delaware Supreme Court's decision affirming his convictions, nothing in the record

demonstrates that Petitioner made any inquiry into the status of his direct appeal. The timeline

of relevant events is instructive. For instance, the Delaware Supreme court's mandate affirming

Petitioner's conviction is dated December 1, 2015.[5] On April 7, 2016, Petitioner filed in the

---

[5] Thus, the mandate was issued twenty-seven days after the date of argument (or submission).
"The Delaware Supreme Court has historically been a national leader at the appellate level in the
timeliness with which it hears and resolves appeals." Further, "in 98.6% of the appeals decided
in FY 2016, the Court met the standard for the Delaware Judiciary for deciding cases within the

Superior Court a motion for transcripts to help him draft a Rule 61 motion -- dated April 4, 2016 – which contains the following statement from Petitioner: "On October 5, 2015 the Supreme Court of Delaware in Case No. 669,2014 [] set [] oral argument on November 4, 2015 at 12:00 noon in Dover." (D.I. 14-13 at 2)  While the motion for transcripts does not provide the date on which Petitioner learned about the Delaware Supreme Court's decision, the fact that Petitioner knew the date of the appellate oral argument demonstrates that Petitioner was alerted to the fact that a decision was near.  Since Petitioner does not indicate if he made any effort to contact the Delaware Supreme Court to inquire about his case, he has failed to demonstrate that he exercised the diligence necessary to trigger equitable tolling.  In addition, Petitioner fails to explain how the lack of notice regarding the Delaware Supreme Court's decision in December 2015 prevented him filing a federal habeas petition during the remaining fifty days of AEDPA's limitations period that remained after the Superior Court denied his Rule 61 motion, especially when Petitioner did not file a post-conviction appeal and was not awaiting notification of any post-conviction appellate decision.

Petitioner's next argument for equitable tolling -- that he is actually innocent[6] -- is similarly unavailing.  In *McQuiggin v. Perkins*, the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period.  *McQuiggin v. Perkins*, 569 U.S. 383, 386, 401 (2013).  However, the *McQuiggin* Court cautioned that "tenable actual-innocence gateway pleas are rare," and a

_____

date of submission." www.courts.delaware.gov  (Supreme Court Case Scheduling FAQs) (last visited January 29, 2021). According to the Court's Internal Operating Procedures, "Each Justice is obligated to decide all assigned matters within 90 days of submission." www.courts.delaware.gov (Delaware Supreme Court Internal Operating Procedures).
[6]Petitioner asserts, "I am innocent of all crimes charged." (D.I. 1 at 13)

petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 386. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, Petitioner's bare-bones and unsupported statement that he is innocent does not warrant equitable tolling because it does not assert or constitute new reliable factual evidence of his actual innocence as required by *McQuiggin* and *Schlup*.

Next, the Court liberally construes Claim Seven's complaint about the Superior Court's refusal to provide Petitioner trial transcripts as another attempt to trigger equitable tolling. Petitioner, however, has failed to demonstrate how the absence of the trial transcripts actually prevented him from timely filing his Petition, especially when, as here, he actually did file a petition without having transcripts. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (requiring prisoner to demonstrate causal relationship between alleged extraordinary circumstances and his late filing). The Court also notes that, while a transcript would have aided Petitioner in supporting the insufficient evidence argument presented in Claim One, Petitioner did not need transcripts in order to present Claims Three, Four, Five, Six, or Eight in a federal habeas petition.

Finally, to the extent Petitioner's late filing was due to a lack of legal knowledge or miscalculation of the one-year filing period, such circumstances do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at \*5-6 (D. Del. May 14, 2004).

8

For all of these reasons, the Court concludes that the equitable tolling doctrine does not apply in this case.  Accordingly, the Court will dismiss the instant Petition as time-barred.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i)  there is an absence of available State corrective process; or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).  A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing

9

constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact

situations; (3) assertion of the claim in terms so particular as to call to mind a specific right

protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the

mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.

1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160

(3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically

exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160;

*Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas

claim to the state's highest court, but that court "clearly and expressly" refuses to review the

merits of the claim due to an independent and adequate state procedural rule, the claim is

exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S.

255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the

petitioner demonstrates either cause for the procedural default and actual prejudice resulting

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at

750-51. To demonstrate cause for a procedural default, a petitioner must show that "some

objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual

10

prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

*See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d

Cir. 2001).  A petitioner demonstrates a miscarriage of justice by showing a "constitutional

violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477

U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency. *See Bousley v.*

*United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner

must present new reliable evidence – not presented at trial –  that demonstrates "it is more likely

than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d

Cir. 2002).

Here, the record reveals that Petitioner did not exhaust state remedies for any of the

instant eight Claims, because he did not appeal the Superior Court's denial of his Rule 61

motion.  At this juncture, any attempt by Petitioner to raise the Claims in a new Rule 61 motion

would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See*

*DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014).  Although Rule

61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion

"asserts a retroactively applicable right that is newly recognized after the judgment of conviction

is final," no such right is implicated in the instant Claims.  Similarly, the exceptions to Rule

61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case,

11

because he has not shown that the state courts lacked jurisdiction, that there is new evidence of his actual innocence, or that a new rule of constitutional law retroactively applies to his Claims.

Since Petitioner is precluded from exhausting state remedies for the eight Claims at this point, the Court must treat the Claims as technically exhausted but procedurally defaulted. Consequently, the Court cannot review the merits of the Claims absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

Petitioner has not demonstrated cause because he does not explain why he did not present any of the eight Claims on post-conviction appeal.  Petitioner also cannot benefit from  the limited exception to the procedural default doctrine established in *Martinez v. Ryan*, 566 U.S. 1 (2012).  In *Martinez*, the Supreme Court held that the failure to appoint counsel (or the ineffective assistance of counsel) during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  *Id.* at 16-17.  In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced.  *Id.* at 9-10, 16-17.  A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability.  *Id.* at 13-14.  Significantly, however, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings**." *Id.* at 16. (emphasis added)

12

The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id*. at 11.

Here, the *Martinez* rule cannot provide cause for Petitioner's default for the Claims that do not allege ineffective assistance of trial counsel. The *Martinez* rule is also inapplicable to the Claims that do allege ineffective assistance of trial counsel, because Petitioner presented those Claims in his Rule 61 motion. The instant default occurred because the Claims were not then presented to the Delaware Supreme Court on appeal from that proceeding.

In the absence of cause, the Court will not address the issue of prejudice. The miscarriage of justice exception also does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will alternatively deny all the Claims in the Petition as procedurally barred.

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

13

The Court concludes that the instant Petition is both time-barred and procedurally barred. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court will dismiss the Petition as time-barred and, alternatively, as procedurally barred.  An appropriate Order will be entered.

14